THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAGHAVENDRAN SHANKAR,<br><br>  Plaintiff,<br><br>  v.<br><br>MICROSOFT CORPORATION,<br><br>  Defendant. | CASE NO. C24-0308-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion to seal (Dkt. No. 32) and motion for leave to amend his complaint (Dkt. No. 47), as well as Defendant's motion to dismiss (Dkt. No. 36), motion to strike (Dkt. No. 57 at 2–4), and motion to consolidate cases (Dkt. No. 60). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary, DENIES Plaintiff's motion to seal and motion for leave to amend his complaint, and GRANTS Defendant's motion to dismiss, motion to strike, and motion to consolidate cases for the reasons described below.

**I.      BACKGROUND**

On March 5, 2024, Plaintiff filed a motion for leave to proceed *in forma pauperis* (Dkt. No. 1). The Honorable S. Kate Vaughan, United States Magistrate Judge, issued a report and recommendation ("R&R") denying the motion and requiring that objections be filed within 14 days of the R&R (Dkt. No. 3). Before the objection period lapsed, Plaintiff paid the filing fee and

1  filed a complaint against several defendants. (*See generally* Dkt. No. 5.) Plaintiff then amended his complaint twice, without the Court's leave. (*See generally* Dkt. Nos. 9, 10.) On the second attempt, Plaintiff dropped all named defendants except for Microsoft Corporation (hereinafter "Defendant"). (*See generally* Dkt. No. 10.) Plaintiff proceeded to seek the Court's leave to amend his complaint on five separate occasions. (*See* Dkt. Nos. 12, 14, 15, 16, 17.) Plaintiff withdrew two of these requests. (*See* Dkt. No. 18 at 1.) The Court eventually granted Plaintiff leave to amend his complaint. (*See* Dkt. No. 21 at 1–2.) Plaintiff then served his amended complaint (hereinafter the "operative complaint") on Defendant on July 26, 2024. (*See* Dkt. No. 31 at 1.)

On August 15, 2024, Defendant moved to dismiss the operative complaint. (*See generally* Dkt. No. 36.) On September 3, 2024, two days before a response was due, Plaintiff filed yet another motion for leave to amend (Dkt. No. 40), presumably, to cure the deficiencies Defendant flagged. Finding the substantive issues closely intertwined, the Court *sua sponte* renoted the briefings for each, in the interest of judicial efficiency. (*See generally* Dkt. No. 51.) The proposed amended complaint (Dkt. No. 47-2) and the operative complaint (Dkt. No. 24) are, frankly, convoluted. Nevertheless, the Court attempts to discern Plaintiff's claims and his bases for them.

According to the proposed amended complaint, from January 2018 to August 2021, Plaintiff was employed by Defendant. (Dkt. No. 47-2 at 15.) In October 2020, Plaintiff was diagnosed with bipolar disorder and thus went on short term disability leave. (*See id*.) In March 2021, shortly after returning from disability leave, Plaintiff began moonlighting for a company called Clear Street. (*See id*.) Plaintiff also moonlighted for another company called Rocket Lawyer. (*See id*. at 17.) After Plaintiff informed Defendant of his moonlighting activities, Defendant terminated Plaintiff, reasoning, among others, that Plaintiff's "job at Rocket Lawyer interferes with [his] job at Microsoft while the Plaintiff was on unpaid leave." (*Id*. at 20).

Based on this conduct, at least per the Court's reading of the complaint(s), Plaintiff

ORDER
C24-0308-JCC
PAGE - 2

1  asserts claims of employment discrimination and retaliation under federal and state law based on
2  his disability and/or religion (Plaintiff identifies as a member of the Hinduism-Brahmin Sama
3  Veda), violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and fraud.
4  (*See generally* Dkt. Nos. 24, 47-2.)

5        Relatedly, on September 10, 2024, Plaintiff filed an "Employment Discrimination
6  Complaint" against Defendant in King County Superior Court, which Defendant promptly
7  removed to this Court (hereinafter the "Second Action"). *See Shankar v. Microsoft*, Case No.
8  C24-1506-JCC, Dkt. No. 1-2 at 1 (W.D. Wash. 2024). Defendant moves to consolidate that
9  action with the instant case. (*See generally* Dkt. No. 60.) Plaintiff does not oppose.

10  **II.     DISCUSSION**

11        **A.     Motion to Consolidate (Dkt. No. 60)**

12        If multiple actions before the Court involve a common question of law or fact, the Court
13  may consolidate them. Fed. R. Civ. P. 42(a)(2). The Court has substantial discretion in
14  determining whether to do so. *Inv'rs Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877
15  F.2d 777, 777 (9th Cir. 1989). The Court considers factors such as the interests of justice,
16  expeditious results, conservation of resources, avoiding inconsistent results, and the potential of
17  prejudice. *See* 8 MOORE'S FEDERAL PRACTICE – CIVIL § 42.10 at [4][a]–[5][d] (3d. ed. 1997).

18        Plaintiff's Second Action involves identical facts and parties as in the instant case.
19  *Compare Shankar*, Case No. C24-1506-JCC, Dkt. No. 1-2, *with* (Dkt. Nos. 24, 47-2). In fact,
20  Plaintiff's complaint in the Second Action often uses the same verbiage as his complaint(s) in the
21  instant case. *Compare Shankar*, Case No. C24-1506-JCC, Dkt. No. 1-2 at 4, *with* (Dkt. No. 47-2
22  at 23) (both alleging "Defendant argued that Plaintiff does not have a disability, is engaging in
23  the activity of dual employment, and is creating job interference in violation of the prohibitions
24  towards moonlighting policy without any discussions on essential functions and making attempts
25  to conceal expectations of essential functions"). And, as with his complaint in the instant action,
26  Plaintiff's complaint in the Second Action appears to raise claims of employment discrimination

and retaliation based on religion and disability, violation of the FMLA, and fraud. *See Shankar*, Case No. C24-1506-JCC, Dkt. No. 1-2 at 3–4. The two actions thus implicate *the exact same* questions of law and fact, thereby supporting consolidation.

Accordingly, the motion to consolidate (Dkt. No. 60) is GRANTED. Moreover, given that Plaintiff's complaint in the Second Action is nearly identical to those in the instant case, and in the interest of justice, expeditious results, and avoiding inconsistent results, the Court declines to consider a new, consolidated complaint and will instead consider only the proposed amended complaint (Dkt. No. 47-2) and the operative complaint (Dkt. No. 24) in the instant case.

**B.      Motion for Leave to Amend (Dkt. No. 47)**

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." Courts apply this policy "with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citations and quotations omitted). Accordingly, courts may decline to grant leave to amend only where "there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Moreover, where a plaintiff appears *pro se*, courts must construe the pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Indeed, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id*. (internal citations and quotations omitted). In turn, a court must give a *pro se* litigant leave to amend unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988).

Here, Plaintiff's complaint is fraught with deficiencies that cannot be cured by amendment.[1]

             *i.*      *Undue Prejudice and Rule 8*

Plaintiff's proposed amended complaint violates the requirement of "a short and plain statement of the claim." Fed. R. Civ. P. 8. The rule requires each allegation to be "simple, concise, and direct." *Id*. To that end, even though courts must construe a *pro se* plaintiff's pleadings liberally, a court may nevertheless decline to grant leave to amend if the complaint "does not clearly and concisely describe the factual allegations nor provide defendants with notice of who is being sued on which theory." *Martushoff v. Luvera*, 2019 WL 2422616, slip op. at 2 (W.D. Wash. 2019). Here, Plaintiff's proposed amended complaint is prolix and confusing.[2] Allowing Plaintiff to serve them would therefore impose an unfair burden on Defendant. *See McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges").

Plaintiff's proposed amended complaint consists of 36 pages, with 246 pages of uncontextualized[3] exhibits.[4] (*See generally* Dkt. Nos. 47-2, 47-3, 47-4.) Within it, Plaintiff makes a host of nonsensical assertions. For instance, Plaintiff states:

> During the disability manic phase the Plaintiff exercised religious coping to improve quality of life which resulted in fighting for duties using knowledge. Plaintiff attempted to use reasonable accommodations to meet uniform performance and productivity standards in the workplace through achieving mutual exclusion of labor input towards essential functions as part of religious coping.

---

[1] Not to mention, Plaintiff's proposed amended complaint still fails to comply with Local Rule 15 (or at least the spirit of it), despite the Court's order (Dkt. No. 45). Rather than indicate on the proposed amended complaint "how it differs from the pleading that it amends by bracketing or striking through the text to be deleted and underlining or highlighting the text to be added," LCR 15(a), Plaintiff has instead stricken his previous complaint, (*see generally* Dkt. No. 47-1), and replaced it with an entirely new complaint, (*see generally* Dkt. No. 47-2).

[2] Plaintiff's operative complaint also suffers the same deficiencies. (*See generally* Dkt. No. 24.)

[3] In fact, at times throughout the proposed amended complaint, Plaintiff merely instructs the reader to "[refer exhibit]." (*See, e.g.*, Dkt. No. 47-2 at 21, 32.)

[4] Plaintiff's operative complaint fares no better, as the complaint consists of 26 pages and is accompanied by 1,114 pages of uncontextualized exhibits. (*See generally* Dkt. Nos. 24-1–24-7.)

(Dkt. No. 47-2 at 12.) Candidly, the Court is unable to decipher this statement. Plaintiff also dedicates several pages to listing evidence of "habits," which he asserts are admissible as "[e]xceptions to hearsay," and are meant to show "Specific Instance of Conduct / Plan, Opportunity, Absence of Mistake, Lack of Accident." (*See id*. at 12–15.) While the Court appreciates Plaintiff's effort to address the Federal Rules of Evidence, such rules are irrelevant at the pleadings stage. Finally, under a heading titled "ADA (Disability)," Plaintiff states: "[b]ut-for-causation is requested to be used at is the highest standard for plaintiff injury claims." (*Id*. at 32.) It is unclear whether Plaintiff is alleging disability discrimination or some state tort law claim. This is just a sampling of Plaintiff's confusing assertions.

Ultimately, and at the risk of sounding too harsh, Plaintiff's proposed amended complaint is largely unintelligible and so confusing as to leave uncertain the nature of his claims. *See White v. FBI*, 2023 WL 8113756, slip op. at 2 (C.D. Cal. Nov. 21, 2023) (finding that *pro se* plaintiff's first amended complaint violated Rule 8 because it was "confusing" and "largely unintelligible"). And, as Defendant rightfully notes, it "cannot reasonably author a line-by-line response to the thousands of disorganized pages of uncontextualized text and documents." (Dkt. No. 49 at 3). As such, it would be unduly prejudicial to Defendant for the Court to grant leave to amend, as Defendant would be forced to respond to and litigate incoherent claims. *See id*.

        ii.      *Futility and Rule 12*

Plaintiff's request for leave to amend is also futile. Here, the futility standard is not unlike the standard of dismissal for failure to state a claim under Federal Rule of Civil Procedure 12 ("Rule 12"). *See Chinatown Neighborhood Ass'n v. Harris*, 749 F.3d 1136, 1144 (9th Cir. 2015) (leave to amend "may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit"); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (discussing relationship between Rule 12(b)(6) dismissal and futility of granting leave to amend). In fact, in arguing futility, Defendant refers the Court to its motion to dismiss, which "identified numerous substantive and factual deficiencies in

ORDER
C24-0308-JCC
PAGE - 6

1 Plaintiff's operative complaint." (Dkt. No. 57 at 4.) Defendant contends, and the Court agrees, that Plaintiff's proposed amendment suffers the same deficiencies as his prior complaint. (*See id.*) Accordingly, the Court assesses Plaintiff's request for leave to amend through the lens of a motion to dismiss.

To survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotations omitted). Moreover, on a Rule 12(b)(6) motion, the Court accepts all factual allegations as true and construes them in the light most favorable to the non-moving party. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Nevertheless, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Id.* at 1249 (internal quotes omitted).

To the extent Plaintiff's proposed amended complaint puts forth any relevant factual allegations, it still fails to state a plausible claim on the merits.[5] For instance, Plaintiff claims that Defendant wrongfully terminated him due to his religion and disability, yet he also acknowledges Defendant's justification for the termination: "The Plaintiff was terminated by Defendant through statements alleging that the Plaintiff doesn't have a disability and that their job at Rocket Lawyer interferes with their job at Microsoft while the Plaintiff was on unpaid leave." (Dkt. No. 47-2 at 20.) Elsewhere, Plaintiff once again states Defendant's justification for

---

[5] Before even reaching the merits, Defendant also argues that dismissal is proper because Plaintiff's federal employment claims are time-barred. (*See* Dkt. No. 36 at 11–13.) Normally the Court's inquiry would end here; it would not need to proceed to the merits of Plaintiff's employment claims. However, because Plaintiff appears to allege employment discrimination under the Washington Law Against Discrimination ("WLAD"), (*see* Dkt. No. 47-2 at 8), which does not affirmatively impose administrative requirements or a statute of limitations, *see* RCW 49.60.230–240, and because the Court properly maintains subject matter jurisdiction through diversity, (*see* Dkt. No. 47-2 at 1–2, 36), the Court therefore proceeds to review the general merits of Plaintiff's employment discrimination claims.

termination:

> [T]he Defendant argued that Plaintiff does not have a disability[6], is engaging in the activity of dual employment, and is creating job interference in violation of the prohibitions towards moonlighting policy without any discussions on essential functions and making attempts to conceal expectations of essential functions which led to Plaintiff's increased mood disturbances and paranoia that resulted in Plaintiff's coerced job termination.

(*Id*. at 23.) In other words, as the Court understands it, Plaintiff alleges that Defendant terminated him for maintaining "dual employment," which violated Defendant's moonlighting policy. Therefore, Plaintiff's own pleadings demonstrate Defendant's perfectly legitimate and nondiscriminatory reason for termination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (to defend against claim of employment discrimination, employer typically bears the burden of articulating some legitimate, nondiscriminatory reason for its adverse employment action). Plaintiff does not otherwise present any explanation as to why his termination amounted to discrimination.

Plaintiff also claims that Defendant interfered with his rights under the FMLA and failed to reasonably accommodate his disability. (*See id.*) However, per Plaintiff's own exhibits, in requesting additional leave of absence for his disability, Plaintiff noted that his psychiatrist recommended *against* "apply[ing] for FMLA," and stated instead that Plaintiff should take "3 months away from [Defendant]" and "an unpaid leave of absence." (Dkt. No. 47-4 at 78.) Defendant then provided Plaintiff with unpaid leave. (*See id*. at 77.) In other words, Defendant provided Plaintiff with the *exact* accommodation that Plaintiff's medical provider recommended.

Instead, Plaintiff appears to be upset with the *type* of accommodation he received. Based

---

[6] To be sure, there is some cause for concern if Defendant truly maintained that "Plaintiff does not have a disability" where Plaintiff clearly meets the legal definition. However, this allegation is inconsistent with Plaintiff's own pleadings and exhibits. Indeed, elsewhere, Plaintiff alleges that "Defendant knew of the disability" and therefore "cleared the Plaintiff for unpaid leave." (*Id*. at 23.) Plaintiff's exhibits also show that Defendant "placed [Plaintiff] on inactive disability leave" and asked Plaintiff to "work with your medical provider to have the attached form completed and submitted," thus suggesting that Defendant wholly acknowledged Plaintiff's disability. (Dkt. No. 47-4 at 77.)

on the Court's understanding, Plaintiff alleges that Defendant failed to accommodate his disability because Defendant would not allow him to moonlight with other employers:

> Plaintiff made requests for reasonable accommodations for a disability at each of the employers – Microsoft, Rocket Lawyer, and Clear Street. . . . Plaintiff's moonlighting happened as a result of religious coping habits when Plaintiff was unable to perform such functions at Microsoft. Plaintiff's request for reasonable accommodations are to meet uniform performance and productivity standards through performance of tasks which requires managing a schedule to accommodate agile business practices.

(Dkt. No. 47-2 at 18–19.) Notwithstanding the fact that Plaintiff appears to conflate religious and disability accommodations, Plaintiff also provides no explanation for how "moonlighting" constitutes a reasonable accommodation. In any event, an employer is not obligated to provide an employee with his "preferred accommodation," and an employer certainly is not required to provide an accommodation that would result in "undue hardship" for the employer. *See Bell v. Boeing Company*, 599 F. Supp. 3d 1052, 1069–70 (W.D. Wash. 2022). Here, per Plaintiff's *own* exhibits, Defendant clearly explained to Plaintiff that his moonlighting "puts [him] in a position that could lead to [him] competing with [Defendant], disclosing [Defendant's] confidential or proprietary information, . . . , and/or soliciting [Defendant's] employees to Rocket Lawyer." (Dkt. No. 47-4 at 24.) That is, Plaintiff's moonlighting jeopardized Defendant's business, thus creating undue hardship. In turn, Defendant's provision of unpaid leave in lieu of FMLA—which came at the recommendation of Plaintiff's psychiatrist—was more than reasonable and certainly did not interfere with Plaintiff's rights under the FMLA. (*See id.* at 78.)

Plaintiff's purported claim of retaliation is also wholly conclusory. Under a heading for "Retaliation," Plaintiff states "Defendant took disciplinary action by targeting the Plaintiff's religious activity." (Dkt. No. 47-2 at 30.) Yet Plaintiff fails to explain what "religious activity" Defendant targeted or what "disciplinary action" Defendant took. To be fair, Plaintiff later notes that "[i]nstances of conduct at Rocket Lawyer arise from a religious practice," (*id*. at 32), and the Court presumes that the "disciplinary action" to which Plaintiff refers is his termination. Even

still, Plaintiff fails to explain how his "[i]nstances of conduct at Rocket Lawyer," (that is, presumably, his moonlighting with Rocket Lawyer), constitute a protected "religious practice," such that his termination for engaging in such conduct would amount to retaliation. In fact, as before, Plaintiff fails to explain how termination for violating Defendant's moonlighting policy constitutes *any* type of discrimination *or* retaliation.

Finally, Plaintiff fails to state a fraud claim entirely, let alone meet the heightened pleading standard for such claims. *See* Fed. R. Civ. P. 9(b). In support of his fraud claim, Plaintiff refers the reader to his "Termination Email" (Dkt. No. 47-4 at 23–24), and notes that Defendant falsely represented that Plaintiff "does not have a disability." (Dkt. No. 47-2 at 35.) Yet nowhere in the termination e-mail does Defendant represent that Plaintiff does not have a disability. (*See generally* Dkt. No. 47-4 at 23–24.) Not to mention, Plaintiff fails to explain how he relied upon Defendant's "false representation" that Plaintiff "does not have a disability." (*See* Dkt. No. 47-2 at 36.) Once again, Plaintiff fails to state a claim upon which relief can be granted.

### iii. Conclusion

Plaintiff's attempt at amending his complaint is futile, and allowing his proposed amended complaint to proceed would impose an undue burden on Defendant. Accordingly, the Court DENIES Plaintiff's motion for leave to amend his complaint (Dkt. No. 47).

**C.  Motion to Dismiss (Dkt. No. 36)**

Having denied Plaintiff's leave to amend his complaint, the Court next considers Defendant's motion to dismiss the operative complaint (Dkt. No. 24). As noted above, Plaintiff's operative complaint suffers from the same fatal deficiencies as those in his proposed amended complaint. That is, the operative complaint is confusing, nonsensical, and fails to state a plausible claim. By way of example, Plaintiff asserts that "[t]he ultimate cause of termination is dual employment at Microsoft & Rocket Lawyer as a result of disability and racial characteristics while abiding by moonlighting policies which were perceived as competitive activities in the event of FMLA or reasonable accommodation." (Dkt. No. 24 at 11.) As the Court understands it,

Plaintiff is effectively conceding that he was terminated by Defendant for violating Defendant's moonlighting policy. Plaintiff provides no explanation for how "dual employment" was a "result" of his disability or race, such that termination for "dual employment" would constitute employment discrimination. Again, this is just a sampling of Plaintiff's implausible claims.

The Court therefore GRANTS Defendant's motion to dismiss (Dkt. No. 36).[7]

### D.   Motion to Strike (Dkt. No. 57 at 2–4)

Defendant requests that the Court strike Plaintiff's memorandum submitted in support of his motion to amend (Dkt. No. 56). Defendant argues that, despite the Court's previous order advising Plaintiff to "comply with the Local Rules," Plaintiff nevertheless filed his memorandum in contravention of LCR 7. (*See* Dkt. No. 57 at 2–3) (citing the Court's order at Dkt. No. 45). The Court agrees. Plaintiff filed his memorandum on the eve of when Defendant's opposition to the motion for leave to amend was due. Plaintiff's motion for leave to amend was filed on September 8, 2024, and noted as a 21-day motion per LCR 7(d)(3). Yet on September 23, 2024—that is, the day before Defendant's opposition was due—Plaintiff filed his supplemental memorandum (Dkt. No. 56). To the extent Plaintiff wished to supplement his motion for leave to amend, he should have filed a praecipe requesting the Court to consider his supplemental filing, which he did not do. *See* LCR 7(m). Thus, to consider Plaintiff's supplement to his motion, which was filed the night before Defendant's opposition and in contravention of the Local Rules, would violate both the spirit and letter of the Local Rules, as well as the Court's prior order (Dkt. No. 45). Accordingly, the Court GRANTS the motion to strike (Dkt. No. 57).

### E.   Motion to Seal (Dkt. No. 32)

Though there is a strong presumption in favor of access to court records, this presumption is not absolute. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The party, seeking to seal court documents, must show that "specific prejudice or harm will result" if

---

[7] Given Plaintiff's multiple attempts to amend his complaint and his own factual allegations which necessarily refute his claims, the Court finds that leave for further amendment would be futile. *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).

the document is not sealed. *Id.* at 1130; *see also Trotsky v. Travelers Indem. Co.*, 2013 WL 12116152, slip op. at 4 (W.D. Wash. 2013) (a party may not summarily file motions to seal that are not supported on a document-by-document basis). In addition, the party must articulate and support the compelling interest that would be harmed if a document is not sealed (and that there is no less restrictive means for protecting that interest.) *See United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017). As currently written, Plaintiff's motion is unduly expansive and does not support sealing the entire docket. Plaintiff also fails to show that specific prejudice or harm might occur if certain documents are not sealed. Finally, to the extent Plaintiff wishes to maintain under seal certain documents containing sensitive information, the Court directs Plaintiff to the Clerk's multiple attempts at instructing Plaintiff "to refile redacted versions." (*See* Dkt. Nos. 12, 40.)[8] The Court therefore DENIES Plaintiff's motion to seal (Dkt. No. 32).

### III.   CONCLUSION

For the foregoing reasons, the Court issues the following ORDERS:

- Defendant's motion to consolidate cases (Dkt. No. 60) is GRANTED. The following cases should be consolidated: C24-0308-JCC and C24-1506-JCC. The Clerk is DIRECTED to close case number C24-1506-JCC and VACATE any case management deadlines set in that case.
- Plaintiff's motion to seal (Dkt. No. 32) and motion for leave to amend (Dkt. No. 47) are DENIED.
- Defendant's motion to dismiss (Dkt. No. 36) and motion to strike (Dkt. No. 57 at 2–4) are GRANTED. Plaintiff's complaint (Dkt. No. 24) is DISMISSED with prejudice. The Clerk is DIRECTED to strike docket number 56.
- Plaintiff's motion for preliminary injunction (Dkt. No. 52) and non-party Lakshmi Shankar's motion to intervene (Dkt. No. 62) are DENIED as moot.

---

[8] Indeed, as the Clerk previously noted, Plaintiff must redact documents containing personal identifiers, like dates of birth, pursuant to Federal Rule of Civil Procedure 5.2(a) and Local Rule of Civil Procedure 5.2. (*See id.*)

DATED this 25th day of October 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE